**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ROBERT BOSCH LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-CV-437 |
| | ) | |
| v. | ) | Judge John F. Grady |
| | ) | |
| TRICO PRODUCTS CORPORATION, | ) | Magistrate Judge Maria Valdez |
| AND TRICO PRODUCTS, | ) | |
| | ) | PUBLIC VERSION |
| Defendants. | ) | |

_____

| | |
|---|---|
| TRICO PRODUCTS CORPORATION, | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT BOSCH LLC, | ) |
| AND ROBERT BOSCH GMBH, | ) |
| | ) |
| Counter-Defendants. | ) |

**ROBERT BOSCH LLC'S INITIAL CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

Page

A. U.S. Patent No. 6,292,974 ................................................................. 1

    1. "a leading-edge face" (claim 1) .................................................. 1

B. U.S. Patent No. 6,530,111 ................................................................. 2

    1. "a connection device (14) that has first and second pivotally connected coupling elements (22 and 16) associated with the wiper arm and the wiper blade, respectively" (claim 1) ............................................. 3

C. U.S. Patent No. 6,553,607 ................................................................. 4

    1. "means for securing the wiper blade on the joint pin" (claims 1, 3, 14) ...... 5

    2. "securing means (60) are disposed on the wiper arm (12) and extending therefrom and that on the other side of the wiper blade (14) facing away from said wiper arm said means cooperate with a stop (62, 63) located on the other side of the wiper blade" (claim 1) .............. 8

D. U.S. Patent No. 6,611,988 ................................................................. 8

    1. "a coupling part (20) … has one hinge half" (claims 1, 11) ..................... 10

    2. "the coupling part (20) is considerably shallower over a longitudinal portion" (claim 1) ................................................................. 11

    3. "a thickness of the coupling part (20) between one end region provided with the bearing recess and another end of the coupling part is less, at least over a longitudinal portion (50), than an end portion of the coupling part that has the bearing recess." (claim 11) ............................. 12

E. U.S. Patent No. 6,675,434 ................................................................. 13

    1. "base body (28) … bracing itself on the wiper blade (16, 20)" (claim 1) .. 13

    2. "at least one detent shoulder (36 or 132)" (claims 1, 5, 7) ...................... 14

    3. "detent tooth (130) that protrudes from the long side of the support element" (claim 7) ........................................................... 15

F. U.S. Patent No. 6,836,926 ................................................................. 16

    1. "Izz is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an taxis, which adapts along with the support element (12), and perpendicular to a y-axis" (claim 1) ............................. 18

i

G.    U.S. Patent No. 6,944,905 ................................................................. 19

H.    U.S. Patent No. 6,973,698 ................................................................. 19

    1.    "spherically curved" (claim 1) ................................................. 20

    2.    "to distribute a contact force against the window over an entire length of said wiper strip ... said contact force of said wiper strip being greater in said center section than in at least one of said two end sections" (claim 1) ............................................................. 21

I.    U.S. Patent No. 6,799,348 ................................................................. 22

    1.    "plurality of claws for mounting the support structure to the beam" (claims 1, 10) ....................................................... 23

    2.    "spacing formation ... for spacing" (claims 1, 10) .................... 25

    3.    "a contact point" (claims 1, 10, 11) ......................................... 27

J.    U.S. Patent No. 6,836,925 ................................................................. 28

    1.    "backbone" (claims 1, 4-6, 8, 14, 15) ..................................... 28

    2.    "a substantially spatially consolidated cross-sectional profile" (claims 1, 8, 14, 15) ................................................ 30

    3.    "(-8.889*10-5*E+0.05378)*L-5.25" (claims 1, 15) .................. 32

    4.    "free form curvature" (claim 4) ............................................... 32

    5.    "has a compound curvature" (claim 5) ..................................... 33

CONCLUSION ............................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acumed LLC v. Stryker Corp.*,
483 F.3d 800 (Fed. Cir. 2007)................................................................2, 17, 18

*AFG Indus., Inc. v. Cardinal IG Co.*,
239 F.3d 1239 (Fed. Cir. 2001)..................................................................4, 19

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*,
657 F.3d 1264 (Fed. Cir. 2011) ....................................................................... 35

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
234 F.3d 14 (Fed. Cir. 2000)................................................................13, 15, 18

*Arthocare Corp. v. Smith & Nephew, Inc.*,
406 F.3d 1365 (Fed. Cir. 2005)....................................................................... 20

*Astrazeneca L.P. v. Apotex, Inc.*,
633 F3d 1042 (Fed. Cir. 2010)..................................................................12, 23

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
359 F.3d 1367 (Fed. Cir. 2004)....................................................................7, 10

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
262 F.3d 1258 (Fed. Cir. 2001)....................................................................... 12

*Bennett Marine, Inc. v. Lenco Marine, Inc.*,
2013 WL 5273116 (Fed. Cir. Sept. 19, 2013) ................................................. 8

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004)....................................................................... 35

*Comark Commc'ns v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)................................................................2, 17, 18

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998)......................................................................... 8

*Elcommerce.com, Inc. v. SAP AG*,
No. 11-1369, 2014 WL 685622 (Fed. Cir. Feb. 24, 2014) ............................. 28

*Ex parte Fressola*,
No. 93-0828, 27 U.S.P.Q.2d (BNA) 1608 (B.P.A.I. May 11, 1993).................. 3

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)....................................................................... 26, 30, 32

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
    91 F.3d 1580 (Fed. Cir. 1996)........................................................ 17

*Halliburton Energy Serv., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)...................................................... 29, 36

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
    690 F.3d 1318 (Fed. Cir. 2012)...................................................... 9

*Inventio AG v. ThyssenKrupp Elevator Am. Corp.*,
    649 F.3d 1350 (Fed. Cir. 2011)...................................................... 28

*JVW Enter., Inc. v. Interact Accessories, Inc.*,
    424 F.3d 1324 (Fed. Cir. 2005)...................................................... 8

*Kinik Co. v. ITC*,
    362 F.3d 1359 (Fed. Cir. 2004)...................................................... 27

*Liebel-Flarsheim Co. v. Medrad, Inc*,
    358 F.3d 898 (Fed. Cir. 2004)........................................................ 1, 17, 18

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
    498 Fed. Appx. 986 (Fed. Cir. 2013).............................................. 6

*Mass. Inst. of Tech. and Elect. For Imaging, Inc. v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006)...................................................... 28

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
    402 F.3d 1364 (Fed. Cir. 2005)...................................................... 13, 14

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008)...................................................... 6

*New Medium LLC v. Barco N.V.*,
    2009 WL 1098864 (N.D. Ill. Apr. 15, 2009) ................................. 4, 19

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003)...................................................... 24

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)......................................................passim

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011)...................................................... 6

*Robert Bosch, LLC v. Pylon Mfg. Corp.,*
Civ. No. 08-542-SLR, 2010 WL 1417874 (D. Del. Mar. 30, 2010)............................ 1, 18

*Salazar v. Procter & Gamble Co.,*
414 F.3d 1342 (Fed. Cir. 2005)....................................................................................... 3

*SanDisk Corp. v. Memorex Prods., Inc.,*
415 F.3d 1278 (Fed. Cir. 2005)........................................................................... 2, 17, 18

*Source Search Techs., LLC v. LendingTree, LLC,*
588 F.3d 1063, 1076 (Fed. Cir. 2009)........................................................................ 7, 10

*Starhome GmbH v. AT&T Mobility LLC,*
No. 12-1694, 2014 WL 685639 (Fed. Cir. Feb. 24, 2014) ............................................ 26

*Thorner v. Sony Computer Entm't Am. LLC,*
669 F.3d 1362 (Fed. Cir. 2012)............................................................................... passim

*Vitronics Corp. v. Conceptronic, Inc.,*
90 F.3d 1576 (Fed. Cir. 1996).......................................................................... 4, 23, 36

*Voda v. Cordis Corp.,*
536 F.3d 1311 (Fed. Cir. 2008)................................................................... 25, 30, 32

*Welker Bearing Co. v. PHD, Inc.,*
550 F.3d 1090 (Fed. Cir. 2008)..................................................................................... 17

## Statutes

35 U.S.C. § 112 ¶6 ..................................................................................................... 5, 25

35 U.S.C. § 112(f)....................................................................................................... passim

## Other Authorities

MANUAL OF PATENT EXAMINING PROCEDURE § 608.01(m) (8th ed. 2010).................................... 3

Random House Unabridged Dictionary 541 (2d ed. 1993) ........................................... 15

A.    U.S. Patent No. 6,292,974[1]

The '974 patent is directed to a beam wiper blade that includes a curved, band-shaped, spring-elastic support element, and a separate spoiler component mounted directly to the top convex surface of the support element. In use, the spoiler creates a downward force, which counteracts the liftoff tendency of the wiper blade and improves cleaning quality at high vehicle speeds. ('974 patent at 1:64–2:10.)

1.    "a leading-edge face" (claim 1)[2]

| Bosch's Construction | Trico's Construction |
|---|---|
| the surface of the component facing into the wind | The longest side of the triangle-shaped component. |

Bosch's construction is consistent with earlier judicial construction of this term, and is supported by the specification, which refers to the "leading edge face of the component facing into the wind." ('974 patent at 3:54–55.)[3] Trico's construction improperly introduces additional limitations from a preferred embodiment and the figures (i.e., "the longest side," "triangle-shaped"). See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc. 358 F.3d 898, 906 (Fed. Cir. 2004) (Patent claims should not be read restrictively "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'"); see also Acumed LLC v. Stryker Corp., 483 F.3d 800, 807–08 (Fed. Cir. 2007) (refusing to read limitations from a single preferred embodiment into the claims where intrinsic

---

[1]    The patents are included in the Appendix as Exhibits 1–10, in the order discussed here.

[2]    A joint claim construction chart is attached hereto as Exhibit 11.

[3]    Bosch asserted the '974 patent in a prior patent-infringement suit against Pylon Manufacturing Corp. ("the Pylon case"). The court construed "a leading-edge face" as "The surface of the component [forming an acute angle with the surface of the window] facing into the wind." Ex. 12, Robert Bosch, LLC v. Pylon Mfg. Corp., Civ. No. 08-542-SLR, 2010 WL 1417874, *1 (D. Del. Mar. 30, 2010) The bracketed phrase is included within the language of claim 1. ('974 patent at 4:29–32.)

evidence suggested that the patentees did not restrict the claim coverage to that embodiment); *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005) (recognizing that "it is axiomatic that without more the court will not limit claim terms to a preferred embodiment described in the specification"); *Comark Commc'ns v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (the language "is clearly found in the . . . patent's description of the preferred embodiment. It is precisely against this type of claim construction that our prior case law counsels.").

**B.     U.S. Patent No. 6,530,111**

The '111 patent is directed to a wiper apparatus that provides for a secure connection between a wiper blade and a particular type of wiper arm referred to as a "top lock" or "pinch tab" wiper arm.

The parties agree upon the following construction for the claim term in the '111 patent:

| Claim | Term | Construction |
|-------|------|--------------|
| 1 | base body (48) | part of the second coupling element from which the spring tongues extend[4] |

The disputed claim term of the '111 patent is discussed below.

---

[4]     The parties' proposed construction simplifies the term for the jury and is supported by the specification. ('111 patent at, *e.g.*, 2:7–14, 2:25–33; *see also* Figs. 7, 9, 13.)

**1. "a connection device (14) that has first and second pivotally connected coupling elements (22 and 16) associated with the wiper arm and the wiper blade, respectively" (claim 1)[5]**

| Bosch's Construction | Trico's Construction |
|---|---|
| a connection device that includes two parts, a first part associated with the wiper arm, and a second part associated with the wiper blade, where the first and second parts are pivotally connected to each other | A connection device made of two parts, a first part that is directly connected to the wiper arm, and a second part that is directly connected to the wiper blade, where the first and second parts can pivot relative to each other. |

Bosch's construction tracks the claim language, and is consistent with the '111 patent specification, which describes a connection device that includes a coupling part associated with the wiper blade and a coupling piece associated with the wiper arm. ('111 patent at 3:15–25; *see also* 1:33–38, 1:43–51, 2:25–33, 3:54–56; Figs. 3, 6 and 11.) The claim language and figure 11 also make clear that the two coupling parts are "pivotally connected" to each other.[6] Bosch's proposed construction, which is supported by the intrinsic evidence, will assist the jury in applying this term, and should be adopted. *See AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) (noting that the purpose for claim construction is to instruct the jury); *New Medium LLC v. Barco N.V.*, 2009 WL 1098864, at *1 (N.D. Ill. Apr. 15, 2009) (explaining that "[t]he object of claims construction is to define for the jury the key terms in the patent or patents in litigation.").

---

[5] The parties agree that reference numerals in the claims have no effect on the claim scope. *Ex parte Fressola*, No. 93-0828, 27 U.S.P.Q.2d (BNA) 1608, 1613 (B.P.A.I. May 11, 1993); MANUAL OF PATENT EXAMINING PROCEDURE § 608.01(m) (8th ed. 2010).

[6] The phrase "first and second pivotally connected" was added by examiner's amendment. (Ex. 13, excerpt from the '111 prosecution history, May 1, 2002 Examiner's amendment, at 2, 4, 5.) The examiner is assumed to possess ordinary skill in the relevant art, and the addition of this phrase to the claims implies that its meaning is clear to an ordinary-skilled person. *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) (noting that statements about a claim term made by an examiner during prosecution of an application, including statement of reasons for allowance, "may be evidence of how one of skill in the art understood the term at the time the application was filed.").

- 3 -

Trico's proposed construction inserts the limitations that the first and second coupling elements have to be "directly connected to" the wiper arm and the wiper blade, and that the first and second coupling parts "can pivot relative to each other." Such inserting should be rejected. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315–16 (Fed. Cir. 2005) (en banc) ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'") (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996)); *see also Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1368–69 (Fed. Cir. 2012) (vacating judgment where neither the claims nor the specification supported limiting the claim scope).

### C. U.S. Patent No. 6,553,607

The '607 patent is directed to a wiper apparatus that includes means for securing a wiper blade to a different type of wiper arm commonly referred to as a "side lock" wiper arm.

The parties agree upon the following construction for the claim term in the '607 patent:

| Claim | Term | Construction |
|---|---|---|
| 1 | on a free end of said arm is fixed on one end of a cantilevered joint pin (56) with a joint axis (55) extending transverse to the longitudinal axis of the wiper arm and essentially in the direction of movement of the wiper arm | on a free end of the arm is fixed one end of a cantilevered joint pin with a joint axis extending transverse to the longitudinal axis of the wiper arm and essentially in the direction of movement of the wiper arm[7] |
| 2 | coupling part (30) | part of the wiper blade belonging to the connecting device[8] |

---

[7] The parties agree that the inclusion of the word "on" was a typographical error and should be removed from the term, and that the reference numerals do not have an effect on the claim scope.

[8] This agreed-to construction is supported by the specification, which explains that the wiper apparatus of the invention includes a coupling part "belonging to a connecting device and having a bearing recess for the joint pin." ('607 patent at 1:48-55; *see also* claim 2.)

| Claim | Term | Construction |
|-------|------|--------------|
| 2 | connecting device (16) | the structure that forms a connection between the wiper arm and the wiper blade[9] |

The disputed claim terms of the '607 patent are discussed below.

### 1. "means for securing the wiper blade on the joint pin" (claims 1, 3, 14)

| Bosch's Construction | Trico's Construction |
|----------------------|----------------------|
| to be construed under 35 U.S.C. § 112(f) | Indefinite |
| **Function:** to secure the wiper blade to the joint pin | If not indefinite, means-plus-function claim. |
| **Structure:** L-shaped shoulder (60) and its equivalents | **Function:** Securing the wiper blade on the joint pin. |
| | **Means:** bearing bore 36, L-shaped leg 61, support regions of leg 63 and 75, transverse groove 38 on wiper blade and cheek regions 72 and 74 of wiper blade, distance of bearing bore 82 to one end of wiper blade is greater than the distance from joint axis 55 to the other end of the wiper blade |

Bosch submits that this term should be construed under 35 U.S.C. § 112(f), according to the presumption that a limitation reciting "means for" should be construed as a means-plus-function limitation. *See Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1340 (Fed. Cir. 2011) (if the limitation contains the term "means" and recites a function, there is a presumption that 35 U.S.C. § 112(f) (formerly 35 U.S.C. § 112 ¶6) applies) (citing *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008)); *see also Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 498 Fed. Appx. 986, 991 (Fed. Cir. 2013) (in determining a means-plus-function claim, "[f]irst, the court must identify the claimed function."). The claimed function is "to secure the wiper blade to the joint pin," and the structure disclosed in the

---

[9]     This agreed-to construction is supported by the specification, which describes the connecting device as "an articulated connection between wiper blade 14 and wiper arm 12." ('607 patent at 4:16–18; *see also*, 1:48–55, 3:44–49; claim 2.)

specification that performs this function is "L-shaped shoulder (60)." ('607 patent at 4:58–5:15, 6:45–56, Figs. 3 and 5.) For clarity, L-shaped shoulder (60) includes leg (61), leg (62) and the inside surface (63) of the leg. (*Id.*)



Fig.3

Trico asserts that this term is indefinite. The specification, however, clearly discloses the function and the corresponding structure for the securing means (*e.g.* '607 patent at Fig. 3), and, therefore, it is not indefinite.[10] *See Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) ("Only claims not amenable to construction or insolubly ambiguous are indefinite.") (internal quotation marks omitted); *see also, Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) (recognizing that "[i]n ruling on a claim of patent indefiniteness, a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification.").

Trico argues, in the alternative, that the term should be construed as a "means plus function" limitation, with the corresponding structure for "means for securing the wiper blade on

---

[10]     Bosch previously asserted the '607 patent, among others, at the International Trade Commission against several respondents. *In re Certain Wiper Blades,* Inv. 337-TA-816 ("the 816 Investigation"). The ITC determined that the term "securing means/ means for securing" is not indefinite, and construed it as a means-plus function limitation similar to Bosch's proposal here. Ex. 14, *In re Certain Wiper Blades,* Inv. 337-TA-816, Commission Op. at 11–18 (April 24, 2013).

the joint pin" including elements of the wiper blade and the wiper arm that are not necessary to perform the claimed function. This is improper, as the corresponding structure in a means-plus-function limitation should include only the necessary structure to perform the recited function. *See Bennett Marine, Inc. v. Lenco Marine, Inc.*, 2013 WL 5273116, *4 (Fed. Cir. Sept. 19, 2013) ("The district court construed this limitation as a means-plus-function limitation under former 35 U.S.C. § 112, ¶ 6 (now § 112(f)). In construing such a limitation, a court must first identify the function recited and then identify the corresponding structure in the written description necessary to perform that function."); *see also, e.g., JVW Enter., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 n.1 (Fed. Cir. 2005) (the corresponding structure "must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function") (citations and internal quotation marks omitted); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1470 (Fed. Cir. 1998) (noting that "paragraph 112(6) permits the disclosure of specific structures in the specification, without limiting protection to the disclosed structures").

As stated above, the necessary structure to perform the "securing" function is the L-shaped shoulder (60) (with its component parts (62) and (63)) of the wiper arm, and does not include elements of the wiper blade as proposed by Trico.[11] Bosch's proposed construction is consistent with an earlier construction by an administrative body (*see* note 10 above) and should be adopted.

---

[11] Elements of the wiper blade should not be included in the construction of this term because the claim language requires "the securing means" to be "disposed on the wiper arm." ('607 patent at 7:17–18.) Further, element 75 of the wiper arm is an additional element of dependent claims 3, 4 and 10, and should not be incorporated into the independent claim 1 due to the principle of claim differentiation. *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (refusing to restrictively construe claim term in independent claim where term was already limited in dependent claim).

2.   "securing means (60) are disposed on the wiper arm (12) and
extending therefrom and that on the other side of the wiper blade (14) facing
away from said wiper arm said means cooperate with a stop (62, 63) located
on the other side of the wiper blade" (claim 1)

| Bosch's Construction | Trico's Construction |
|---|---|
| a side of the wiper blade facing away from the wiper arm contacts the inner side of the securing means | Indefinite |

Bosch submits that the first part of this term, "securing means (60) are disposed on the

wiper arm (12) and extending therefrom," should be construed under 35 U.S.C. § 112(f), and

have the same construction as "means for securing" discussed above. The second part of the

disputed limitation, "on the other side of the wiper blade (14) facing away from said wiper arm

said means cooperate with a stop (62, 63) located on the other side of the wiper blade," should be

construed as "a side of the wiper blade facing away from the wiper arm contacts the inner side of

the securing means" as proposed by Bosch. One of ordinary skill in the art would understand the

meaning of this claim language in light of the specification. ('607 patent at, *e.g.*, Abst.; 6:63–

7:4; Figs. 2, 3, 5, 8.) Therefore, as an administrative agency previously determined, the term is

not indefinite.[12] *Source Search Techs.*, 588 F.3d at 1076; *see also Bancorp Servs.*, 359 F.3d at

1371.

D.   **U.S. Patent No. 6,611,988**

The '988 patent is directed to a beam-type wiper blade that includes a connection for

securing the blade to a side lock wiper arm. The unique design of the connection results in a low

profile and is less expensive to manufacture than other low profile connections. ('988 patent at

---

[12]   The ITC determined that the term "securing means/ means for securing" is not indefinite.
Ex. 14, *In re Certain Wiper Blades*, Inv. 337-TA-816, Commission Op. at 11–18 (April 24,
2013).

1:57–60, 2:52–53.) Further, the unique design allows for the efficient removal and replacement of the wiper blade from the wiper arm. (*Id.* at 1:47–51.)

The parties agree upon the following constructions for claim terms in the '988 patent:

| Claim | Phrase | Construction |
|-------|--------|--------------|
| 1, 11 | a bearing recess (36) | hole[13] |
| 1 | a transverse groove (54) | a channel extending across the coupling part[14] |
| 2 | Two cheek regions (40 and 42, and 64) … by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part | two side regions … each side region is formed on one of two longitudinal sides of the coupling part[15] |
| 5 | wherein in a ratio | wherein a ratio[16] |
| 11 | the bearing recess (36) is disposed near one end of the coupling part (20) | the bearing recess is disposed close to one longitudinal end of the coupling part and closer to that end than the opposite end of the coupling part[17] |

The disputed claim terms of the '988 patent are discussed below.

---

[13] This construction simplifies the term for the jury and is supported by the specification. ('988 patent at, *e.g.,* Fig. 3, 4, *see also* 1:40–46, 2:63–65, 3:15–18.)

[14] The agreed-to construction is consistent with the specification and the plain meaning of the words "transverse" and "groove." ('988 patent at 2:44–53, Fig. 3.)

[15] The agreed-to construction will assist the jury in applying this term. It is supported by the specification, which describes that the cheek regions are "formed on one of the two long sides of the coupling part," and extend in the longitudinal direction of the wiper blade. ('988 patent at 1:64–2:4; *see also,* Figs. 3, 4.)

[16] The parties agree to correct a typographical error here, which a court may do where the meaning is clear and not in dispute.

[17] This construction stems from the specification including figures 3 and 4, which show and describe the bearing recess as located closer to one end of the coupling part of the wiper blade. ('988 patent at Figs. 3, 4; 2:26–33.)

### 1.    "a coupling part (20) … has one hinge half" (claims 1, 11)

| Bosch's Construction | Trico's Construction |
|---|---|
| a coupling part … has one portion formed by the bearing recess | One of two equal portions of the coupler that contains the bearing recess. |

Bosch submits that its construction will assist the jury in applying this term, and is supported by the specification.  It is also consistent with an earlier construction by an administrative body.[18]  The '988 specification describes the hinge as the connection between the wiper arm and wiper blade. ('988 patent at 1:20–25; 1:41–46; 4:13–15 ("The connection device is therefore simultaneously embodied as a hinge connection between the wiper blade 10 and the wiper arm 30").)  The hinge half on the coupling part is formed by the transverse bore—the transverse bore also "acts as a bearing recess." (*Id.* at 4:31–40.)  Claim 1 itself explains that the hinge half of the coupling part is "formed by a bearing recess." (*Id.* at 6:39–40.)

Trico's proposed construction improperly rewrites the claim language to require "one of two equal portions of the coupler" to contain the bearing recess.  However, "hinge half" is used exclusively within the specification to refer to the portion of the coupling part *formed by* the bearing recess, and there is no discussion of "two equal portions" of the coupling part. (*See id.* at 1:60–64; 4:31–44.)  Moreover, the specification explains that the other half of the hinge is located on the wiper arm, not on the wiper blade. ('988 patent at 1:20–23.)  Therefore, Trico's construction should be rejected. *See Astrazeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1052 (Fed. Cir. 2010) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'")

---

[18]    In the 816 Investigation, the Administrative Law Judge (the "ALJ") construed the term "hinge half" of the '988 patent as "portion of the coupling part formed by the bearing recess," as proposed by Bosch. (Ex. 15, excerpts from Order 45, 2012 WL 4174874, at *9–12.)

(quoting *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001)).

### 2.    "the coupling part (20) is considerably shallower over a longitudinal portion" (claim 1)

| Bosch's Construction | Trico's Construction |
|---|---|
| the coupling part is considerably lower in height over a longitudinal portion | The coupling part (20) has a reduction in thickness such that, when the securing means are engaged, the securing means does not increase the overall thickness of the coupling part. |

Bosch's construction stems from the specification including the figures, which show a region of the coupling part with a height that is considerably lower than the surrounding portions of the coupling part ('988 patent at Fig. 3 (reference numeral 50 denotes the considerably shallower region); 5:12–15.), and is consistent with an earlier determination by an administrative agency.[19] The specification recites certain dimensions of the coupling part, which provides the basic scale of the coupling part from which the relationships between the claimed elements follow. ('988 patent at 2:16–26.)  The specification provides further guidance as to what qualifies as the "considerably shallower" longitudinal portion. ('988 patent at 2:47–54.)

Trico's proposed construction is improper because it includes the phrase "when the securing means are engaged, the securing means does not increase the overall thickness of the coupling part," thereby including features of the wiper arm into a claim directed solely to the wiper blade.  *See Phillips*, 415 F.3d at 1315–16; *Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1371 (Fed. Cir. 2005) (reversing construction where "the district court added a limitation that is not present in the claim language and is not supported by the specification or

---

[19]     Further, in the 816 Investigation, the ITC construed "considerably shallower" to mean "considerably lower in height," as proposed by Bosch. (Ex. 14, *In re Certain Wiper Blades*, Inv. 337 TA 816, Apr. 24, 2013 Commission Op. at 22.)

prosecution history."); *see also Thorner*, 669 F.3d at 1368–69. Further, Trico's construction improperly reads out part of the claim limitation "over a longitudinal portion," and should be rejected for this additional reason. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000) (holding that the district court erred in accepting the infringer's construction of "help access window" because it "read the 'help' limitation out of the claim.").

> **3.  "a thickness of the coupling part (20) between one end region provided with the bearing recess and another end of the coupling part is less, at least over a longitudinal portion (50), than an end portion of the coupling part that has the bearing recess." (claim 11)**

| Bosch's Construction | Trico's Construction |
|---|---|
| the height of the coupling part between one end region provided with the bearing recess and another end of the coupling part is less, at least over a longitudinal portion, than an end portion of the coupling part that has the bearing recess | The coupling part (20) has a reduction in thickness such that, when the securing means are engaged, the securing means does not increase the overall thickness of the coupling part. |

Bosch proposes to construe a "thickness" to mean "the height" of the coupling part to make the limitation easier for the jury to apply, but otherwise leave the claim language intact as it is clear on its face and can be applied without construction. Bosch's construction is supported by the specification, which refers to the "thickness 48 of the coupling part" ('988 patent at 5:10, Fig. 6), and describes that the "structural height of the wiper blade" may depend on the "thickness" of a portion of the coupling part. ('988 patent at 2:44–53, *see also* Fig. 3.) *Phillips*, 415 F.3d at 1315–16.

Trico's proposed construction for this term is identical to its proposed construction for the term "the coupling part (20) is considerably shallower over a longitudinal portion" discussed in section D. 2. above. Again, such construction is improper because it includes the phrase "when the securing means are engaged, the securing means does not increase the overall thickness of the coupling part," thereby including features of the wiper arm into a claim directed

solely to the wiper blade. *See Phillips*, 415 F.3d at 1315–16; *Nellcor*, 402 F.3d at 1371; *see also Thorner*, 669 F.3d at 1368–69. Trico's construction also ignores the following parts of the construed phrase: "between one end region provided with the bearing recess and another end of the coupling part," "at least over a longitudinal portion (50)," and "than an end portion of the coupling part that has the bearing recess." Trico's construction should be rejected for this reason as well. *Apple*, 234 F.3d at 25.

### E. U.S. Patent No. 6,675,434

The '434 patent relates generally to a termination part (end cap) that covers the ends of the support element in a beam-type wiper blade. ('434 patent at 1:53–65.)

The parties agree upon the following construction for the claim term in the '434 patent:

| Claim | Phrase | Construction |
|---|---|---|
| 1 | on the side of the support element remote from the window or glass, in the middle portion of the support element, a device (14) for attaching a driven wiper arm is **disposed** | **disposed**: located[20] |

The disputed terms of the '434 patent are discussed below.

#### 1. "base body (28) … bracing itself on the wiper blade (16, 20)" (claim 1)

| Bosch's Construction | Trico's Construction |
|---|---|
| a portion of the termination part that is located on the top side of the support element remote from the window…supporting itself on the wiper blade | The bottom of the termination part in contact with the top surface of the wiper blade that supports the termination part. |

Trico's proposed construction is incorrect for several reasons. First, it contradicts the claim language that the base body should be bracing "itself"—and not the entire termination

---

[20] The parties' agreed-to proposed construction, which is supported by specification, will assist the jury in applying this term. ('434 patent at Fig. 1; 3:52–66.)

part—on the wiper blade. Second, it limits the base body to "the *bottom of* the termination part." Third, it requires the bottom of the termination part to be "*in contact with* the top surface" of the wiper blade. Such limitations are not supported by the '434 specification and should be rejected. *See Phillips*, 415 F.3d at 1315–16; *see also Thorner*, 669 F.3d at 1368–69.

Bosch's proposed construction for the "base body (28)" comes directly from the claim language, and is consistent with the specification. ('434 patent at 6:55–59; 7:53–54.) In particular, claim 1 defines "base body" as the portion of the termination part that is located on the side of the support element remote from the window. Further, the term "bracing itself on the wiper blade (16, 20)" should be construed as "supporting itself on the wiper blade," which is consistent with the specification, and with an earlier construction by an administrative body. [21] ('434 patent at 6:55–59, Figs. 1, 5, 7, 9, 10.)

### 2. "at least one detent shoulder (36 or 132)" (claims 1, 5, 7)

| Bosch's Construction | Trico's Construction |
|---|---|
| at least one surface of the support element that engages with a counterpart shoulder on the termination part, cooperating to help prevent the longitudinal shifting of the termination part | A structure on a protrusion from the support element such that it can point towards the other end of the support element. |

Bosch's proposed construction is supported by the '434 specification. ('434 patent at Abstract, 2:18–25, 2:59–67, 4:39–62, 5:56–6:19, 6:44–46, 6:62–7:4.) It is also consistent with an earlier construction by an administrative body.[22]

---

[21]    In the 816 Investigation, the ALJ agreed with Bosch's proposed constructions presented here. (Ex. 15, excerpts from Order 45, 2012 WL 4174874, at *28–31).

[22]    In the 816 Investigation, the parties agreed and the ALJ adopted the same construction for "detent shoulder" that Bosch proposes here. (Ex. 15, excerpts from Order 45, 2012 WL 4174874, at *28). Further, the Federal Circuit has indicated that "'detent' denotes a type of

By contrast, Trico's proposed construction improperly reads limitations from preferred embodiments into the claims by limiting the "detent shoulder" to "A structure on a protrusion from the support element." ('434 patent at, *e.g.*, 2:9–17, 2:33–41, Figs. 4, 6, 8.) *See Liebel-Flarsheim,* 358 F.3d at 906 (Fed. Cir. 2004); *see also Acumed,* 483 F.3d at 807–08 (Fed. Cir. 2007); *SanDisk,* 415 F.3d at 1286 (Fed. Cir. 2005); *Comark Commc'ns,* 156 F.3d at 1187 (Fed. Cir. 1998). Further, Trico's construction improperly incorporates a separate limitation of the same claim requiring the detent shoulder to "point towards the other end of the support element" (the claim recites "at least one detent shoulder *pointing toward the other end portion,*" '434 patent at 7:59–60 (emphasis added)). Finally, Trico's proposed construction reads out the qualifying term "detent" (the detent shoulders of the support element are used for mounting of the termination parts on the support element, (*see* the '434 patent at, *e.g.*, 1:58-62, 2:42-52, 3:1-8). Reading such a term out of the claim limitation is improper. *See Apple,* 234 F.3d at 25.

### 3. "detent tooth (130) that protrudes from the long side of the support element" (claim 7)

| Bosch's Construction | Trico's Construction |
| --- | --- |
| a protrusion, one surface of which defines a detent shoulder | a tooth shaped structure that projects beyond the support element such that a surface points toward the other end of the support element |

Bosch submits that its proposed construction is consistent with the specification and language of claim 7, which requires that "the detent shoulder (132) is embodied on a detent tooth

---

device with a generally understood meaning in the mechanical arts." *Welker Bearing Co. v. PHD, Inc.,* 550 F.3d 1090, 1096 (Fed. Cir. 2008); *see Greenberg v. Ethicon Endo-Surgery, Inc.,* 91 F.3d 1580, 1583 (Fed. Cir. 1996). One definition recited by the Federal Circuit is "a mechanism that temporarily keeps one part in a certain position relative to that of another, and can be released by applying force to one of the parts." *Greenberg,* 91 F.3d at 1583 (quoting Random House Unabridged Dictionary 541 (2d ed. 1993)). Such definition is consistent with Bosch's proposed construction.

(130) that protrudes from the long side of the support element." ('434 patent at 8:28–29.)  It is also consistent with an earlier judicial construction of this term, as well as the earlier construction by an administrative body. [23]

Trico's construction impermissibly seeks to limit "detent tooth" to a "tooth shaped structure." *See Liebel-Flarsheim*, 358 F.3d at 906 (Fed. Cir. 2004); *see also Acumed*, 483 F.3d at 807–08 (Fed. Cir. 2007); *SanDisk*, 415 F.3d at 1286 (Fed. Cir. 2005); *Comark Commc'ns*, 156 F.3d at 1187 (Fed. Cir. 1998).  Further, there is no support for Trico's proposed limiting the claim language "protrudes from the long side of the support element" to "projects beyond the support element such that a surface points toward the other end of the support element."  The words "project beyond" do not appear in the '434 specification, and "pointing toward the other end portion" is a limitation of the independent claim 1, from which claim 7 indirectly depends. Inserting this language into the construction of the phrase "detent tooth (130) that protrudes from the long side of the support element" would confuse the jury and should be rejected.  *See AFG*, 239 F.3d at 1247; *New Medium*, 2009 WL 1098864, at *1.

### F.     U.S. Patent No. 6,836,926

The '926 patent is directed to a beam-type wiper blade having a support element (beam) with a substantially constant thickness and width, wherein the support element's profile satisfies the inequality: $\dfrac{F_{wf} * L^2}{48 * E * I_{zz}} < 0.009$, where $F_{wf}$ is the pressure force exerted on the wiper blade, L is the length of the support element, E is the modulus of elasticity of the support element and $I_{zz}$

---

[23]     In both the 816 Investigation and the Pylon case, Bosch's proposed construction for "detent tooth" was adopted.  (Ex. 15, excerpts from Order 45, 2012 WL 4174874, at *34–36); Ex. 12, *Robert Bosch, LLC v. Pylon Mfg. Corp.*, Civ. No. 08-542-SLR, 2010 WL 1417874, at *3 (D. Del. Mar. 30, 2010.

is the moment of inertia of the cross-sectional profile around a z-axis perpendicular to an s-axis, which adapts along with the support element, and perpendicular to a y-axis. ('926 patent at Abstract; 5:47–50; 10:4–25.) The lateral deflection at the ends of a wiper blade designed according to this invention is minimized, thereby preventing undesirable rattling. (*Id.* at 2:1–18.)

The parties agree upon the following constructions for claim terms in the '926 patent:

| Claim | Phrase | Construction |
|-------|--------|--------------|
| 1 | Fwf is an actual contact force exerted on the wiper blade by the wiper arm (18) in condition when it is placed against a window | a downward force provided by the wiper arm that presses the wiper blade against a window[24] |
| 9 | contact force distribution p(s), which prevails when the wiper blade (10) is pressed against a flat window (15) | a force distribution resulting from a downward force from the wiper arm along the wiper blade when the wiper blade is pressed against a flat window[25] |

The disputed claim term of the '926 patent is discussed below.

---

[24]    The agreed-to construction will assist the jury in applying this term and is consistent with the '926 patent specification, which describes $F_{wf}$ as a contact force that "places the wiper blade 10 with its entire length against the surface 26 of the window 15 to be wiped," when the wiper blade is pressed by the wiper arm "loaded in the direction of the arrow 24." ('926 patent at 4:49–54; *see also* the '926 patent at 4:61–67, 5:16–18, 5:50–54, 9:39–42, Figs. 1, 2, 3, 6.)

[25]    The agreed-to construction will assist the jury in applying this term and is consistent with the '926 patent specification, which describes the contact force distribution p(s) as the force distribution produced when the wiper blade is "pressed with a force $F_{wf}$ (arrow 24) against a window 26, particularly by the wiper arm 18," along the length of the wiper blade. ('926 patent at 5:50–55; *see also, e.g.,* the '926 patent at 3:31–41, 3:55–60, 8:5–12, 8:54–61, 9:4–15.)

1. **"Izz is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an taxis, which adapts along with the support element (12), and perpendicular to a y-axis" (claim 1)**

| Bosch's Construction | Trico's Construction |
|---|---|
| $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an s-axis which adapts along with the support element, and perpendicular to a y-axis, calculated by the formula $$I_{zz} = \frac{d*b^3}{12}$$ | The support element has a constant width and constant thickness resulting in a rectangular cross sectional profile, such that $I_{zz}$ is calculated for the support element by the formula d*b³/12.  Agree only regarding correction of "taxis" to "s-axis." |

The parties agree that "an taxis" is a typographical error, and the term is properly understood as "an s-axis." A court may make a simple correction when the meaning of the term is not in dispute. *See, e.g., Arthocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1374–75 (Fed. Cir. 2005) (recognizing that "[t]he correction of a ministerial error in the claims, which also serves to broaden the claims, is allowable if it is 'clearly evident from the specifications, drawings, and prosecution history how the error should appropriately be corrected' to one of skill in the art"). Bosch's proposed construction leaves the rest of the claim language unchanged, including at the end a formula for calculating the moment of inertia, $I_{zz}$, for clarity. Bosch submits that its construction is consistent with the '926 patent specification, which teaches using this formula to calculate $I_{zz}$ ('926 patent at 6:58–7:1); Trico's proposed construction includes the same formula.

Trico's proposed construction improperly narrows the claim language to a support element that has "a constant width and constant thickness resulting in a rectangular cross sectional profile." Such construction ignores and is at odds with the claim language itself, which recites that the support element "has a substantially rectangular cross sectional profile (40), with

a substantially constant width b and a substantially constant thickness d." ('926 patent at 10:23–25.)

### G.    U.S. Patent No. 6,944,905

The '905 patent is directed to a beam-type wiper blade that includes a spoiler with two diverging legs. The parties agree upon the following construction for the claim terms in the '905 patent:

| Claim | Phrase | Construction |
|-------|--------|--------------|
| 13, 17 | Wiper blade part (15)/ device piece (15) | Agreed that terms are interchangeable with one another and should be given plain and ordinary meaning[26] |

### H.    U.S. Patent No. 6,973,698

The '698 patent is directed to a beam-type wiper blade that includes a support element that distributes pressure along the length of the wiper strip such that the contact force of the wiper strip with the window is greater in the center section of the wiper blade than in at least one of its ends. ('698 patent at Abstract, 1:59–62.) The reduced force in the end section or sections encourages the wiper lip to flip over sequentially from the end or ends to the center, avoiding knocking noise that would otherwise occur. (*Id.* at 1:65–2:4.)

The parties agree upon the following construction for the claim term in the '698 patent:

| Claim | Phrase | Construction |
|-------|--------|--------------|
| 1 | a concave curvature in said center section of the carrying element is sharper than in said sections thereof | a concave curvature in said center section of the carrying element is sharper than in said end sections thereof[27] |

---

[26]    These terms are used interchangeably in the '905 patent to refer to the same element, as evidenced by the same reference numeral 15 associated with both terms. ('905 patent at, *e.g.*, 3:65–4:2, 8:14–16, 8:20–21, 9:54–56, 9:58–10:1, 10:24–26, 10:28–32.)

[27]    The agreed-to proposed construction corrects a typographical error in the claim.

The disputed terms of the '698 patent are discussed below.

### 1. "spherically curved" (claim 1)

| Bosch's Construction | Trico's Construction |
|---|---|
| having at least one radius of curvature | no construction necessary/ordinary meaning |

Bosch submits that its construction would assist the jury in applying this term, is supported by the specification, and is consistent with an earlier construction by an administrative body.[28] A "spherically curved" window is described in the '698 patent as having multiple radii of curvature depending on which portion of the window is being examined; this definition is further supported by the specifications of the other asserted Bosch patents. ('698 patent at 1:19–20 ("the curvature radii of spherically curved vehicle windows change with each wiper blade position"); *see also* '974 patent at 1:10–17; '988 patent at 4:8–13; '434 patent at 1:13–21; '926 patent at 1:17–21; '905 patent at 1:15–21, 4:55–61.) The specification, and claim 1, also explain that the invention requires that the curvature of the wiper blade is *sharper* than the *sharpest* curvature of a spherically curved window (*e.g.*, the '698 patent at 3:20–27 (discussing the "maximal curvature of a spherically curved window"); 6:17–19.) *See Astrazeneca*, 633 F.3d at 1051–52 ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'") (quoting *Vitronics*, 90.3d at 1582).

---

[28]    In the 816 Investigation, where the '698 patent was asserted, the term "spherically curved window" was construed as "a window having at least one radius of curvature" as proposed by Bosch here. (Ex. 16, excerpts from Order 69, 2013 WL 2708250, at *6–9).

**2.    "to distribute a contact force against the window over an entire length of said wiper strip … said contact force of said wiper strip being greater in said center section than in at least one of said two end sections" (claim 1)**

| Bosch's Construction | Trico's Construction |
|---|---|
| **contact force**: force applied by a wiper arm to the wiper strip<br><br>**center section/end sections** – no construction necessary/ordinary meaning | **"contact force"**:  force applied by a wiper arm to the wiper strip<br>[agreed to proposed construction for "contact force" only]<br><br>**"center section"**: The portion of the carrying element immediately below the engagement point of the wiper arm.<br>**"end sections"**: The portions of the carrying element located immediately adjacent the ends of the carrying element. |

The agreed-to construction for the "contact force" term is consistent with the understanding of one of ordinary skill in the art, and is supported by the '698 patent specification:

> The force (arrow 24) places the wiper blade 10 over its entire length against the surface 26 of the window 15 to be wiped. . . . .  Due to the pressure (arrow 24), the wiper blade 10 rests over its entire length against the window surface 26 with its wiper lip 28 that belongs to the wiper strip 14. This produces a stress in the band-like spring-elastic carrying element 12, which assures a proper contact of the wiper strip 14 or the wiper lip 28 over its entire length against the motor vehicle window 15.

('698 patent at 3:19–21, 3:27–33; *see also, e.g.,* '698 patent at Abstract, 3:15–33, 4:16–40, Figs. 1, 2, 5–7.)  Bosch proposes that the remainder of this limitation, including the terms "center section" and "end sections," should be given its plain and ordinary meaning, as it is clear on its face and can be applied by the jury without construction.  This is consistent with an earlier determination by an administrative agency,[29]  The contact force, which is applied to the wiper

---

[29]    In the 816 Investigation, the ITC determined that the limitation "said wiper strip having a center section and two end sections, said contact force of said wiper strip being greater in said center section than in at least one of said two end sections" was not indefinite, and afforded it a plain and ordinary meaning.  (Ex. 14, *In re Certain Wiper Blades*, Apr. 24 Commission Op., at

strip through the spring-elastic carrying element, is greater in the center section of the wiper strip (that is, the area under the connection device ('698 patent at 4:32–37)) than in at least one of the end sections. Moreover, it is not necessary for a patentee to "define his invention with mathematical precision in order to comply with the definiteness requirement." *Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331, 1341 (Fed. Cir. 2003).

Trico's proposed constructions for the "center section" and "end sections" impermissibly narrow the claim scope by limiting these terms to "*immediately* below" the engagement point of the wiper arm, and "*immediately* adjacent" the ends. Indeed, the term "immediately" does not appear in the '698 specification, and Trico does not explain how it should be defined. Trico's construction should thus be rejected. *Phillips,* 415 F.3d at 1315–16; *see also Thorner,* 669 F.3d at 1368–69.

### I.     U.S. Patent No. 6,799,348

Trico's '348 patent is directed to a beam-type wiper blade assembly, which includes a coupler for a wiper arm that allows "resilient bending movement of the beam in the plane of curvature along its full length." ('348 patent at Abstract.) The coupler is mounted to the beam with a plurality of claws, which permit "relative longitudinal movement" between the beam and the coupler, and includes a spacing formation "for spacing the contact point of the beam a predetermined distance from the support structure," providing a space in the coupler in which the beam can flex. (*Id.* at, *e.g.,* 1:15–17, 1:26–31, 1:59–65, 4:15–20; Figs. 4, 6–8.)

---

33–34.) The Commission also found that the terms "center portion" and "end portions" (or sections) "are not indefinite and do not require construction." (*Id.*)

1.    "plurality of claws for mounting the support structure to the beam"
(claims 1, 10)

| Bosch's Construction | Trico's Construction |
|---|---|
| at least two pairs of claws for attaching the support structure to the beam in a way that allows for longitudinal movement of the windscreen wiper relative to the coupler | no construction necessary/ordinary meaning |

Bosch's proposed construction stems from the specification of the '348 patent, and Trico's clear disavowal of claim scope during prosecution. To overcome a prior art rejection, the applicant amended the claims by replacing the term "mounting means" with "plurality of claws." (Ex. 17, the '348 file history, May 3, 2004 Am., at TRICO-BOSCH00226957–58.) The applicant supported the amendment by citing to parts of the specification and figures, each disclosing at least two pairs of claws (*id.* at TRICO-BOSCH0226961, partially incorporating the limitations of application claim 6, "the mounting means comprises two pairs of spaced apart claws (24.1, 24.2)," and citing to parts of the specification corresponding to the '348 patent at 3:6–8, 3:44–45, 3:49–55, Figs. 1–4, 6–8). That amendment, made in an effort to obtain allowance of the claims, limits the scope of this term, and "plurality of claws" should be construed as "at least two pairs of claws." *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008) ("'[a] patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim.'") (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740–41 (2002)).[30]

_____

[30]    The prosecution history of the PCT priority application to the '348 patent further supports Bosch's proposed construction. Claim 1 of the original PCT application was rejected, but claim 3 was determined to meet the patentability requirements, if rewritten according to the PCT requirements, one of which is to include reference numerals for the citations of technical features. (Ex. 18, PCT/IB99/01573 file history, written opinion at §§ V, VIII.) The original application claim 3 included "a mounting means carried on the support structure for mounting the coupler to the beam *at two spaced apart points*" (Ex. 18, PCT/IB99/01573 file history,

The remaining portion of Bosch's proposed construction, namely "for attaching the support structure to the beam in a way that allows for longitudinal movement of the windscreen wiper relative to the coupler," is supported by the specification as well as statements made by the applicant in arguing over the prior art during prosecution of the application that led to the '348 patent. The '348 patent states that in couplers of prior art beam blades "the beam is tightly gripped and flexing movement of the beam in the coupler is inhibited," while the coupler of the present invention allows for "relative longitudinal movement" "between the beam and the support structure at the pair of claws paced from the securing formation." ('348 patent at 1:15–17; 1:63–65.)

In arguing over the prior art Quinlan patent during the prosecution of the '348 patent, the applicant stated that the coupler taught by the amended claims "overcomes the disadvantages of the prior art because the claws *allow for increased longitudinal movement of the wiper 14 relative to the coupler 16* for improved force distribution of the wiper 14 while moving across a curved windshield." (Ex. 17, the '348 file history, May 3, 2004 Am., at TRICO-BOSCH0226961 (emphasis added).) The '348 patent specification explains that this feature requires the use of two pairs of claws. ('348 patent at 3:48–54.) Thus, Bosch's proposed construction is fully supported by the specification and prosecution history, and should be adopted. *See Kinik Co. v.*

---

original appl., at 225-226 (emphasis added)). In response to the written opinion, the applicant submitted a set of amended claims to the PTO, rewritten to comply with PCT rules. The language of the original claim 3 was changed to "a mounting means (24.1, 24.2) for mounting …." (*Id.*, amended appl., at 188–189). The amended set of claims was submitted to the USPTO as a PCT priority document. (Ex. 17, the '348 file history, at TRICO-BOSCH0227237–255.) But it is clear from the original claim 3 of the PCT application that the coupler was mounted to the beam "at two spaced apart points," which supports Bosch's construction. *See Starhome GmbH v. AT&T Mobility LLC*, No. 12-1694, 2014 WL 685639, at *7 (Fed. Cir. Feb. 24, 2014) (finding a statement made in a related patent application "relevant to interpreting the claims" and further supporting the defendant's proposed construction).

*ITC*, 362 F.3d 1359, 1365 (Fed. Cir. 2004) ("The inventor's discussion [in the specification and during prosecution] of the disadvantages of the low binder prior art sheds light on the scope of the invention. Claims cannot be construed as encompassing the prior art that was distinguished in the specification and disclaimed during prosecution.") (citations omitted).

### 2. "spacing formation … for spacing" (claims 1, 10)

| Bosch's Construction | Trico's Construction |
|---|---|
| to be construed under 35 USC § 112 ¶ 6:<br>function: spacing the upper surface of the beam from the support structure to provide a space in the coupler in which the beam can flex<br>structure: a fulcrum formation located on the bottom of the support structure between the claws of at least one of the pairs of the plurality of claws, as shown in the '348 patent figures 6–8<br><br>or, alternatively, if not construed as a means-plus-function limitation, then it is indefinite | no construction necessary/ordinary meaning<br><br>OR ALTERNATIVELY<br>a protrusion |

Bosch submits that the term, as defined in the specification and described during the prosecution, should be construed as a means-plus-function limitation; otherwise, it should be deemed indefinite. As stated by Bosch's technical expert, Dr. Dubowsky, the term "spacing formation" "does not have any ordinary meaning to a person of ordinary skill in the art" (Ex. 19, Dubowsky Decl. at ¶ 4.) Thus, the disputed term recites a function ("spacing the upper surface of the beam from the support structure") without including a sufficient structure for performing that function. Therefore, the term should be construed under 35 USC § 112 (f). *Mass. Inst. of Tech. and Elect. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1353–54 (Fed. Cir. 2006) (a limitation lacking the term 'means' may be construed as a means-plus-function limitation "if it is shown that 'the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"); *Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011) (explaining that

"[w]hen a claim term lacks the word 'means,' the presumption [that such term should not be construed as "means-plus-function" term] can be overcome if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'") (internal citations omitted).

One of ordinary skill in the art would understand the function of the "spacing formation" described in the specification as "spacing the upper surface of the beam from the support structure to provide a space in the coupler in which the beam can flex." ('348 patent at 1:15–18, 1:26–31; Ex. 19, Dubowsky Decl. at ¶ 5.) *See Elcommerce.com, Inc. v. SAP AG*, No. 11-1369, 2014 WL 685622, at \*14–15 (Fed. Cir. Feb. 24, 2014) (holding that expert testimony regarding a means-plus-function claim term can be considered, because without it the courts cannot "decide whether, for a specific function, the description in the specification is adequate from the viewpoint of a person of ordinary skill in the field of the invention.") The corresponding structure disclosed in the specification for performing that function is "a fulcrum formation" shown in figures 6–8. (Ex. 19, Dubowsky Decl. at ¶ 6.) To perform its function, the "fulcrum formation" must be located on the bottom of the support structure, and positioned between the claws of at least one of the pairs of the plurality of claws, as shown in the figures and described in the specification. ('348 patent at 1:36–47, 3:8–12, 3:43–48, 3:56–61.) There is no other structure for the "spacing formation" disclosed in the specification (*see, e.g.,* Ex. 19, Dubowsky Decl. at ¶ 6, 7), and Bosch's proposed construction should be adopted. *See Halliburton Energy Serv., Inc. v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008) ("For so-called means-plus-function limitations, claim scope is limited to structure disclosed in the specification and equivalents.").

If, however, the Court declines to construe this limitation under 35 USC § 112 (f), a person of ordinary skill in the art would not understand the meaning of this term, as it has no plain and ordinary meaning. (Ex. 19, Dubowsky Decl. at ¶ 4, 8.) In that case, the term would not be amenable to construction, and therefore should be deemed indefinite. *Halliburton*, 514 F.3d at 1251 ("Even if a claim terms' definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translated the definition into meaningfully precise claim scope.").

### 3. "a contact point" (claims 1, 10, 11)

| Bosch's Construction | Trico's Construction |
|---|---|
| a single point of contact along the length of the beam | no construction necessary/ordinary meaning |

Bosch's proposed construction stems from the specification of the '348 patent, and Trico's clear disavowal of claim scope during prosecution. The applicant attempted to overcome a rejection over the prior art by replacing the limitation that the spacing formation be "engageable in use with an upper surface of the beam, for spacing the upper surface of the beam a predetermined distance from the support structure" with the limitation that the spacing formation be "engageable in use with an upper surface of the beam *at a contact point*, for spacing *the contact point* of the beam a predetermined distance from the support structure." (Ex. 17, the '348 file history, Dec. 8, 2003 Am. at TRICO-BOSCH0226970, TRICO-BOSCH002975–76 (emphasis added).) Figure 4 of the '348 patent, which according to the applicant shows the contact point "on the beam 18 under the bottom edge 28 of the coupler 16" (*id.*), depicts a cross-section of the wiper blade through the pair of claws (24.2). The specification of the '348 patent explains that in figure 4, "the rounded ends 28 of the fulcrum formations abut an upper surface 52 of the beam 18." ('348 patent at 3:46–47.) A "rounded end"

can only contact a planar surface at a single point. *See, e.g.*, the '348 patent at figure 8, depicting the middle cross-section of the coupler along the length of the beam and showing rounded ends 28. Therefore, because a narrowing amendment was made during prosecution to avoid the prior art, the term "contact point" should be limited to "a single point of contact along the length of the beam". *See Thorner*, 669 F.3d at 1366–68; *Voda*, 536 F.3d at 1325 (citing *Festo Corp.*, 535 U.S. at 740–41).

### J. U.S. Patent No. 6,836,925

Trico's '925 patent is directed to a single-beam wiper blade with an elongated curved backbone that "has a substantially spatially consolidated cross-sectional profile." ('925 patent at Abstract.) Backbones having the width, thickness, length, and the modulus of elasticity that fall within the ranges disclosed in the '925 patent allegedly have improved performance compared to the backbones whose parameters fall outside of those ranges. (*Id.* at Abstract, claims 1, 7, 8, 14.)

### 1. "backbone" (claims 1, 4-6, 8, 14, 15)

| Bosch's Construction | Trico's Construction |
|---|---|
| part of the wiper blade whose elastic modulus, width and thickness are the main factors that determine the vertical and lateral stiffness of the wiper blade; the backbone must be a single beam, and may not be longitudinally split down the middle | no construction necessary/ordinary meaning |

Bosch's proposed construction stems from the specification of the '925 patent, and Trico's arguments disavowal of certain types of "backbones" made during prosecution. In this respect, this limitation is linked to the term "substantially spatially consolidated cross-sectional profile" discussed below. First, the specification describes that the alleged invention relates to a windscreen wiper that "includes an elongate curved backbone which is of a resiliently flexible material," and that "the backbone may be in the form of a beam," which has "width and thickness dimensions," "a radius of curvature," and other characteristics. ('925 patent at

Abstract, 1:10–18.) The invention claims that certain relationships "between the width, the beam material's Young's modulus and the total length of the beam and the thickness, the beam material's Young's modulus and the total length" allegedly improve wiper quality. (*Id.* at 1:19–25.) During prosecution, Trico explained that:

> It is important to note that the vertical stiffness is a <u>function to the third power</u> of the backbone's thickness and is also proportional to its width. Thus, even a slight difference in backbone thickness has a <u>significant impact</u> on vertical stiffness of the backbone. Likewise, the lateral stiffness is a <u>function of the third power</u> of the backbone width and is proportional to the thickness. Thus, even a slight difference in backbone width has a <u>significant impact</u> on lateral stiffness of the backbone. Again, the vertical stiffness and the lateral stiffness are main factors that determine wiping performance.

(Ex. 20, the '925 patent file history, May 17, 2004 amendment at TRICO-BOSCH0226634) (emphasis in original).)

Second, Trico explained during prosecution that the invention of the '925 patent is in a "single beam" wiper blade. (Ex. 20, the '925 patent file history, Dec. 8, 2003 amendment at TRICO-BOSCH00226659–60: "The applicant has found that single beam wiper blades according to the invention overcome many difficulties experienced by prior art single beam wiper blades.") Finally, to overcome a rejection over two prior art references, Trico distinguished the backbone of the '925 invention from the prior art backbones that were single beam "longitudinally split down the middle," such that their cross-sections were composed of two spaced rectangles. (Ex. 20, the '925 patent file history, Dec. 8, 2003 amendment at TRICO-BOSCH00226657.) These statements evidence a "clear and unmistakable disclaimer" of the claim scope, and support limiting the term "backbone" in the way proposed by Bosch. *See Thorner*, 669 F.3d at 1366–68; *Voda*, 536 F.3d at 1325 (citing *Festo*, 535 U.S. at 740–41).

## 2. "a substantially spatially consolidated cross-sectional profile" (claims 1, 8, 14, 15)

| Bosch's Construction | Trico's Construction |
|---|---|
| indefinite;<br><br>or, alternatively,<br>a cross-sectional profile wherein the actual perimeter of a cross-section coincides with the shortest possible perimeter encapsulating that cross-section, and wherein the cross-section does not consist of two laterally spaced rectangles | a cross-sectional profile wherein the actual perimeter of a cross-section coincides with the shortest possible perimeter encapsulating that cross-section |

Bosch submits that the term is indefinite. The '925 patent defines "spatially consolidated" as "the actual perimeters of a cross-section coincides with the shortest possible perimeter encapsulating that cross-section." ('925 patent, 1:26-30.) However, the specification and prosecution history provide no guidance as to what is "substantially spatially consolidated" (and how it differs from the "spatially consolidated"). (Ex. 19, Dubowsky Decl. at ¶ 12.)

If, however, the Court determines that the phrase "substantially spatially consolidated" is not indefinite for failing to provide guidance as to what is meant by "substantially spatially consolidated," Bosch's construction should be adopted. The specification describes "spatially consolidated" as "the actual perimeters of a cross-section coincides with the shortest possible perimeter encapsulating that cross-section." ('925 patent, 1:26–30.) Further, in response to a rejection over the prior art, the applicant stated: "The term spatially consolidated is defined in the body of the specification to mean that the actual perimeter of a cross-section of the backbone coincides with the shortest possible perimeter encapsulating that cross-section." (Ex. 20, excerpts from the '925 patent file history, Dec. 8, 2003 amendment, at TRICO-BOSCH00226656.) In the same response, the applicant described the backbone of a prior art

Merkel reference (Ex. 21, DE 197 34 843) as not being "spatially consolidated." The applicant explained:

> The backbone disclosed in the Merkel et al. patent is not spatially consolidated because the cross section of the backbone of this wiper consists of two laterally spaced rectangles. A rectangular boundary extending around the two rectangles is the shortest possible perimeter encapsulating this profile. However, this does not coincide with the actual perimeter of the backbone.

(Ex. 20, excerpts from the '925 patent file history, Dec. 8, 2003 amendment, at TRICO-BOSCH00226657.) The backbone disclosed in Merkel '843, which consists of two laterally spaced rectangles, is reproduced below (the backbone is highlighted in red):



(Ex. 21, Merkel '843 patent at Fig. 3.)

Finally, Bosch's construction agrees with the understanding of the term by the named inventor, Mr. Swanepoel.

Extrinsic evidence, such as documents

showing the state of the art, and patentee's contemporaneous materials may provide useful guidance for the court. *See AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1277 (Fed. Cir. 2011) ("We may look to extrinsic evidence 'to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art.'") (citations omitted).

### 3. "(-8.889*10-5*E+0.05378)*L-5.25" (claims 1, 15)

| Bosch's Construction | Trico's Construction |
|---|---|
| indefinite | no construction necessary/ordinary meaning |

Bosch submits that this term is indefinite because the formula used to calculate the maximum width of the backbone, as written, results in a negative number for the width. Since the width of a physical object cannot be negative, this result is nonsensical. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373–74 (Fed. Cir. 2004) (invalidating claim where the claim language as written resulted in a nonsensical construction). Therefore, the claim should be declared invalid as inoperable.[31]

### 4. "free form curvature" (claim 4)

| Bosch's Construction | Trico's Construction |
|---|---|
| indefinite | no construction necessary/ordinary meaning |

Bosch submits that this term is indefinite because the '925 patent does not provide any guidance to one of ordinary skill in the art as to the meaning of this term. The phrase "free form" as applied to curvature does not have any meaning to a person of ordinary skill in the art, and the specification and prosecution history of the '925 patent do not explain what it means. (Ex. 19, Dubowsky Decl. at ¶¶ 14–15.) Indeed, the specification fails to explain how the "free

---

[31]     This claim term could be a typographical error, but Trico has not suggested this during any of the conferences between the parties.

form curvature" differs from simply a "curvature." (Ex. 19, Dubowsky Decl. at ¶ 16.) Because this claim term is impossible to understand, it is indefinite. *See Halliburton*, 514 F.3d at 1251.

### 5. "has a compound curvature" (claim 5)

| Bosch's Construction | Trico's Construction |
|---|---|
| is curved in two planes | has more than one radius of curvature |

Bosch submits that the patentee defined this term in the specification, stating that the backbone "may have a compound curvature (that is, curved in two planes)." ('925 patent at 2:23–25.) This definition provided in the specification is is clear and unambiguous, and the claim term should be construed according to it. *Thorner*, 669.3d at 1365 (citing *Vitronics Corp.*, 90 F.3d at 1580). By contrast, the construction proposed by Trico is not supported by the specification. The '925 patent explains that the backbone has "a radius of curvature at each point along its length" ('925 patent at 1:17-18, *see also*, 2:63–65), but does not discuss multiple radii of curvature. Trico's construction therefore should be rejected. *Phillips*, 415 F.3d at 1315–16.

## CONCLUSION

For the foregoing reasons, Bosch respectfully requests that the Court adopt its constructions where provided, and decline to construe the terms that Bosch has indicated do not require construction.

Dated:  March 11, 2014                          /s/  Jeffrey S. Ginsberg

                                        William P. Oberhardt
                                        WILLIAM P. OBERHARDT, LLC
                                        70 West Madison St., Suite 2100
                                        Chicago, IL 60602
                                        Tel.: 312-251-1100
                                        Atty. Reg. No. 3122407

                                        OF COUNSEL:
                                        Jeffrey S. Ginsberg
                                        Mark A. Hannemann
                                        Rose Cordero Prey
                                        Ksenia Takhistova
                                        KENYON & KENYON LLP
                                        One Broadway
                                        New York, NY 10004
                                        Tel.: (212) 425-7200

                                        *Attorneys for Plaintiff/Counter-Defendant*
                                        *Robert Bosch LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2014 a copy of the foregoing document was served by causing a copy of the same to be delivered in the following manner:

By Email:
David S. Becker, Esq.
Jennifer L. Fitzgerald, Esq.
Freeborn & Peters
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
dbecker@freebornpeters.com
jfitzgerald@freebornpeters.com

Nicholas Groombridge, Esq.
Leslie G. Fagen, Esq.
Paul, Weiss, Rifkind,
Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
ngroombridge@paulweiss.com
lfagen@paulweiss.com

/s/ Ksenia Takhistova
Ksenia Takhistova
KENYON & KENYON LLP
One Broadway
New York, NY 10004
Tel.: (212) 425-7200

*Attorney for Plaintiff/Counter-Defendant Robert Bosch LLC*

- 35 -