## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
ROBERT BOSCH LLC,                    )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )    No. 12 C 437
                                     )
TRICO PRODUCTS CORPORATION, and      )
TRICO PRODUCTS,                      )
                                     )
          Defendants.                )
_____)
TRICO PRODUCTS CORPORATION,          )
                                     )
          Counter-Plaintiff,         )
                                     )
          v.                         )
                                     )
ROBERT BOSCH LLC and ROBERT BOSCH    )
GmbH,                                )
                                     )
          Counter-Defendants.        )
```

### MEMORANDUM OPINION

Before the court is defendant Trico Products Corporation's ("Trico") motion for summary judgment of noninfringement of U.S. Patent Nos. 6,553,607 (the "'607 patent"), 6,530,111 (the "'111 patent"), 6,944,905 (the "'905 patent"), and with respect to Trico's "Duralast Flex Blade." For the reasons explained below, we deny Trico's motion.

### BACKGROUND

Trico manufactures windshield wiper blades. (Trico's L.R. 56.1 Stmt. of Material Facts ("Trico's Stmt.") ¶ 1.) Plaintiff

Robert Bosch LLC ("Bosch") manufactures windshield-wiper systems and sells them to automobile manufacturers. (Id. at ¶ 2.) It also sells aftermarket replacement blades. (Id.) The '607 patent and the '111 patent each claim a "wiper apparatus" requiring, among other things, a "wiper arm" and a "wiper blade." (Id. at ¶ 22.) Bosch alleges that Trico's wiper blades infringe the '607 and '111 patents when combined with a pre-existing wiper arm. Trico argues that it is entitled to summary judgment on this claim under the doctrine of permissible repair.

Bosch also alleges that Trico's Duralast Flex Blade infringes the '905 patent, which claims a windshield wiper blade. Since 2002, Unipoint Electric Manufacturing Co., Ltd. ("Unipoint") has manufactured the Duralast Flex Blade for Trico. (Id. at ¶ 20.) Robert Bosch GmbH ("Bosch GmbH") acquired Unipoint in 2011.[1] In an email dated August 16, 2011, Unipoint assured Trico that their business relationship would "follow the ordinary business course" after Bosch GmbH acquired the company. (Trico's Stmt. ¶ 31.) The email attached a letter from Bosch GmbH addressed to Unipoint, asking Unipoint to reassure its customers that "Robert Bosch GmbH will fulfill all contracts and agreements which were concluded by [Unipoint] with their customers in a manner consistent with their

---

[1] Bosch is a wholly-owned subsidiary of Bosch GmbH. (See Bosch GmbH Answer to Fourth Am. Counterclaims ¶ 12.) The parties disagree about the exact date when Bosch GmbH completed the acquisition. (See Bosch's Resp. to Trico's Stmt. ¶ 30.) But that dispute is irrelevant for the present motion.

past practices after the Closing." (<u>Id.</u>; <u>see also</u> Email Dated Aug. 16, 2011, attached as Ex. 9 to Bosch's Resp. to Trico's Stmt.)  In March 2012, Trico asked Unipoint to confirm that "Trico has the right to use or sell those products manufactured for and sold to Trico by Unipoint." (Trico's Stmt. ¶ 32.)  Unipoint responded as follows:

> Unipoint became a member of the Bosch Group since Dec. 1, 2011.  All products sold to Trico by Unipoint since take-over Dec. 1, 2011 under the existing supply agreements between the parties may be sold by Trico to third parties as stipulated in the respective supply agreements.

(<u>Id.</u> at ¶ 33; <u>see also</u> Letter Dated March 22, 2012, attached as Ex. D to Kubasiak Decl., attached as Ex. 2 to Trico's Stmt.)  Trico argues that Unipoint's assurances, and its affiliation with Bosch, prohibit Bosch from pursuing any claim against Trico for sales of Unipoint-manufactured Duralast Flex Blades.

## **DISCUSSION**

### A.  **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  <u>See</u> <u>Pitasi v. Gartner Group, Inc.</u>, 184 F.3d 709, 714 (7th Cir. 1999).  "The court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

## B.  Permissible Repair

The unrestricted sale of a patented product "exhausts" the patentee's right to control the purchaser's use of the product. <u>Jazz Photo Corp. v. International Trade Com'n</u>, 264 F.3d 1094, 1105 (Fed. Cir. 2001). After the sale, the purchaser "has the rights of any owner of personal property, including the right to use it, repair it, modify it, discard it, or resell it, subject only to overriding conditions of the sale." <u>Id.</u> at 1102. But the right to repair the purchased product does not include the right to "construct an essentially new article on the template of the original, for the right to make the article remains with the patentee." <u>Id.</u> There is a "continuum" between permissible repair and impermissible reconstruction. <u>Id.</u>; <u>see also</u> <u>Aktiebolag v. E.J. Co.</u>, 121 F.3d 669, 674 (Fed. Cir. 1997) ("[T]here is no bright-line

test for determining whether reconstruction or repair has occurred."). Relevant factors include: "the nature of the actions by the defendant, the nature of the device and how it is designed (namely, whether one of the components of the patented combination has a shorter useful life than the whole), whether a market has developed to manufacture or service the part at issue and objective evidence of the intent of the patentee." Aktiebolag, 121 F.3d at 673. Besides these factors, the Federal Circuit requires the party asserting permissible repair to show that the repaired device was first sold in the United States. See Jazz Photo, 264 F.3d at 1105 ("United States patent rights are not exhausted by products of foreign provenance. To invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent.").

### 1. Territoriality

Trico argues that the Supreme Court eliminated the territoriality requirement in Kirtsaeng v. John Wiley & Sons, Inc., 133 S.Ct. 1351 (2013). Kirtsaeng abolished the "first sale" rule as applied to claims for copyright infringement. See id. at 1371. The Federal Circuit may at some point reconsider Jazz Photo in light of the Supreme Court's analysis in Kirtsaeng, but it has not done so yet. It appears that only one district court has addressed Kirtsaeng's impact on Jazz Photo. See Lexmark Intern., Inc. v. Ink Technologies Printer Supplies, LLC, Case No. 1:10-cv-564, 2014 WL

1273665, *2-7 (S.D. Ohio Mar. 27, 2014). The <u>Lexmark</u> court
concluded after careful analysis that <u>Kirtsaeng</u> does not overrule
<u>Jazz Photo</u>. <u>Id.</u> at *2-7. Trico's argument to the contrary is
cursory. (<u>See</u> Trico Reply at 3.) We decline to hold that a first
sale in the United States is no longer a requirement for patent
exhaustion. Bosch contends that some of the relevant wiper
apparatuses were first sold abroad, then imported into the United
States. (<u>See</u> Bosch's Stmt. of Add'l Facts ¶¶ 48-50, 52-56.) Trico
concedes the point, at least at this stage of the case. (<u>See</u>
Trico's Resp. to Bosch's Stmt. of Add'l Facts ¶¶ 50, 56.) But
Bosch admits that it also sold some patented apparatuses within the
United States. (<u>See</u> Bosch's Stmt. of Add'l Facts ¶¶ 42- 44.) As
to those devices, the doctrine of permissible repair may still
apply.

**2.   Whether Wiper-Blade Replacement Constitutes Permissible
      Repair**

We think it is clear that, in the abstract, vehicle owners who
replace wiper blades with Trico's products have permissibly
repaired the purchased wiper "apparatus." Bosch recommends that
consumers replace wiper blades every six months. (<u>See</u> Trico Stmt.
¶ 39.) There is no evidence in the record about the expected life
of the entire wiper system, including the wiper arm. But the
parties appear to agree — consistent with the experiences of anyone
who has ever owned a car — that the "apparatus" is expected to
outlast the blades. <u>See Aktiebolag</u>, 121 F.3d at 673 (the fact that

the replaced component wears out sooner than the entire combination supports finding permissible repair). Both Trico and Bosch sell aftermarket replacement blades, which supports the conclusion that there is a well-developed market for replacement parts. See id. (an established market for replacement parts supports a finding of permissible repair). Finally, the act of replacing a wiper blade is analogous to the repair of other devices that Supreme Court and the Federal Circuit have held to be permissible. See Wilson v. Simpson, 50 U.S. 109, 1123 (1850) (replacing the blades of a patented planing machine constituted permissible repair); Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 346 (1961) (replacing the worn fabric cover of a patented convertible top was permissible repair); Kendall Co. v. Progressive Medical Technology, Inc., 85 F.3d 1570, 1574-75 (Fed. Cir. 1996) (replacing the pressure sleeves in a patented medical device was permissible repair); FMC Corp. v. Up-Right, Inc., 21 F.3d 1073, 1077-79 (Fed. Cir. 1994) (replacing the worn "picking heads" of a harvester was permissible repair). Bosch argues that wiper-blade replacement constitutes reconstruction because of the alleged differences between parties' products: if, as Trico argues, its wiper blades do not infringe Bosch's patents, then they must be so different from the patented product that their use constitutes impermissible reconstruction. (See Bosch Resp. at 11.) In support of this argument, Bosch cites cases discussing the difference between

repair and reconstruction, generally. (<u>Id.</u> at 12.) The Supreme Court and the Federal Circuit have refined the distinction between the two concepts in cases applying the doctrine to various devices. Those cases support finding permissible repair in this case. (<u>See</u> *supra*.) Conversely, Bosch has not cited any case in which a court has held that replacing a part analogous to the wiper blades in this case constituted impermissible reconstruction.

The more difficult question is whether Bosch's wiper-blade patents (e.g., the '905 patent) render the permissible-repair doctrine inapplicable. The parties agree that the '111 and '607 patents are "combination" patents. A "combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." <u>Aro</u>, 365 U.S. at 344. This is so even if a particular component is "essential" to the combination as a whole:

> No element, **not itself separately patented**, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be.

<u>Id.</u> at 345 (emphasis added). Bosch argues that unlike the fabric covers in <u>Aro</u>, its wiper blades are patented, albeit by separate patents. So, according to Bosch, replacing the wiper blade with a Trico product infringes **<u>both</u>** the component patents **<u>and</u>** the combination patents. What little case law there is on this subject tends to support Bosch's argument. In <u>Warner & Swasey Co. v. Held</u>,

256 F.Supp. 303, 311 (E.D. Wis. 1966), the court reasoned that the existence of a separate patent on one component of the patented combination negated the inference that "in selling the combination [the patentee] contemplates or intends licensing such purchaser to replace the patented part from any source other than himself."[2]

The court in R2 Medical Systems, Inc. v. Katecho, Inc., 931 F.Supp. 1397 (N.D.Ill. 1996) followed Warner & Swasey and elaborated on its reasoning:

> Where the part is unpatented, the Supreme Court has emphasized that the critical question is whether the entire combination is exhausted.
>
> But if the new part is protected under separate patent, the court does not inquire whether the entire combination is exhausted upon the replacement of the worn part. Replacement with the patented part does not infringe the combination patent because that separate patent ascribes the status of the combination to that part. The separate patent does not render the inventiveness of the component an "essential" element of the invention of the combination. Aro I clearly rejected this analysis. Rather, replacement infringes the combination patent because the purchaser engages in an unauthorized use of the combination by configuring it with an element that infringes another patent of the patent owner. Whether considered a form of unauthorized use or reconstruction, the purchaser has no license to maintain the "use of the whole" through elements that infringe the combination patent owner's separate patent. Thus, in contrast to the repair and reconstruction inquiry, R2's legal action under the system patents does not challenge the use of the electrode elements, "separately viewed." It

---

[2] The Fifth Circuit Court of Appeals cited Warner & Swasey with approval in Hensley Equipment Co. v. Esco Corp., 383 F.2d 252, 260 (5th Cir. 1967). But unlike this case, Hensley appears to have involved multiple claims within a single patent. See id. at 259-60. If the '111 and '607 patents claimed wiper blades and Trico's products infringed those claims, then the doctrine of permissible repair would not excuse that infringement. But the question here is whether infringing a separate component patent also infringes the combination patent.

challenges a particular use of the combination with the infringing electrodes.

Id. at 1445-46 (footnote omitted).

Trico argues that this reasoning is inconsistent with the Supreme Court's decision in Quanta Computer, Inc. v. LG Electronics, Inc., 553 U.S. 617 (2008). Quanta held that a patentee exhausts its patent rights by selling a product that substantially embodies, but only partially practices, the patent. Id. at 630-35. Trico relies in particular on the following passage from the Court's opinion:

> With regard to LGE's argument that exhaustion does not apply across patents, we agree on the general principle: The sale of a device that practices patent A does not, by virtue of practicing patent A, exhaust patent B. But if the device practices patent A while substantially embodying patent B, its relationship to patent A does not prevent exhaustion of patent B. For example, if the Univis lens blanks had been composed of shatter-resistant glass under patent A, the blanks would nonetheless have substantially embodied, and therefore exhausted, patent B for the finished lenses. This case is no different. While each Intel microprocessor and chipset practices thousands of individual patents, including some LGE patents not at issue in this case, the exhaustion analysis is not altered by the fact that more than one patent is practiced by the same product. The relevant consideration is whether the Intel Products that partially practice a patent — by, for example, embodying its essential features — exhaust *that* patent.

Id. at 634-35 (emphasis in original). Trico construes this passage to require patent-by-patent analysis in cases involving exhaustion. But the issue in Quanta was substantially different than the issue here. The Court did not hold, or even suggest, that replacing a

portion of a patented combination with a separately patented
component only infringes the component patent.

Notwithstanding the lack of contrary authority, we have
reservations about the reasoning in Warner & Swasey and R2 Medical
Systems. Both courts emphasized the patentee's expectations and
intentions. See Warner & Swasey, 256 F.Supp. at 311 ("The
patentee, therefore, must have contemplated when he sold the
combination that unless he extended to the purchaser a license to
replace such parts from any available source, such combination
would be of little use to the purchaser."); see also R2 Medical
Systems, 931 F.Supp. at 1446 ("It is because the patent owner's
common ownership of the component patent negates the presumption
that his sale of the patented combination also includes a license
to preserve the entire combination through the use of the
infringing device as an element of the patented combination.").
But as the Supreme Court explained in Aro, "the claims made in the
patent are the sole measure of the grant." Aro, 365 U.S. at 339.
If the '111 and '607 patents do not claim wiper blades, how can an
individual who replaces the wiper blade infringe those patents?
Also, what if the combination patent predates the component patent?
Does the component patent retroactively expand the scope of the
combination patent to cover the previously unpatented component?
We are not prepared at this time to reject Warner & Swasey and R2
Medical. But we have sufficient doubts about whether they were

correctly decided to withhold ruling pending a more developed record.

**C.   Whether the Unipoint Acquisition Bars Bosch's Claim That Trico's Duralast Flex Blade Infringes its Patents**

Trico makes essentially two arguments in support of its claim that Bosch cannot sue it for selling Unipoint-manufactured blades. First, it argues that Unipoint — as a member of the "Bosch Group" — promised that it would "fulfill all contracts and agreements which were concluded by [Unipoint] with their customers in a manner consistent with their past practices after the closing." (Trico Stmt. ¶ 31.)  Bosch has clarified, consistent with this commitment, that it is not pursuing damages for post-closing sales by Trico. (See Bosch Resp. at 13.)  The question is whether Bosch agreed not to pursue claims alleging pre-closing infringement.  When Trico asked Unipoint to clarify Bosch GmbH's commitment, it stated only that Trico was authorized to resell Unipoint-manufactured blades purchased "since" December 1, 2011.  (See Letter Dated March 22, 2012, attached as Ex. D to Kubasiak Decl.)  So, as far as the record reveals, neither Unipoint nor Bosch/Bosch GmbH ever stated that it would not pursue infringement claims for sales pre-dating the closing.

Trico also argues that Bosch: (1) stepped into Unipoint's shoes after the closing, thereby barring any infringement claim that Unipoint could not have pursued in its own right; and (2) would be unjustly enriched if it was permitted to pursue claims for

infringement while retaining the benefits of Unipoint's pre-closing sales to Trico. With respect to the first point, it appears that Bosch and Unipoint remain distinct corporate entities. Without some authority to the contrary — and Trico has not cited any — we will not treat Bosch and Unipoint as if they were the same company. With respect to the second point, we are not persuaded by Trico's analogy to PSN Illinois, LLC v. Abbott Laboratories, No. 09 C 5879, 2011 WL 4442825 (N.D. Ill. Sept. 20, 2011). In that case, PSN claimed that certain third parties had infringed its patented biotechnology. Id. at *2. It settled those claims and granted the third parties licenses to use PSN's patents in the future, and released them from liability for past infringement. Id. at *7-10. The third parties then sold the patented cell lines to the defendants. Id. at *1-2. The PSN court held that PSN had exhausted its patent rights in the cell lines when it granted licenses to the third parties. Id. at *6-7, *9-10. So, it could not pursue infringement claims against downstream purchasers like the defendants. Id. PSN may be analogous to our case, depending upon the terms of Bosch GmbH's acquisition of Unipoint. But Trico has not cited or discussed those terms. Instead, it makes a more abstract point: Bosch GmbH — and Bosch, as its wholly-owned subsidiary — acquired the benefit of Unipoint's prior sales to Trico when it acquired Unipoint. But it has not cited any case law supporting that theory, nor has it developed its argument that

Bosch benefitted from Unipoint's sales to Trico.  On this record, we decline to rule that the Unipoint acquisition bars Bosch's claim that Trico's Duralast Flex Blade infringes its patents.

### **CONCLUSION**

Trico's motion for summary judgment [104] is denied.


DATE:      May 21, 2014

ENTER:     _____

           John F. Grady, United States District Judge